PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GEER, | ) | |
| | ) | CASE NO. 4:16CV2213 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| THOMAS ALTIERE, SHERIFF, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 27] |

Pending is Defendant Trumbull County Sheriff Thomas Altiere's Motion for Summary Judgment (ECF No. 27) in this § 1983 employment case. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motion is granted.

## I. Stipulated Facts and Background

The stipulated facts[1] are as follows:

1. Plaintiff Michael Geer was hired by the Trumbull County Sheriff's Office as a full-time Deputy Sheriff in 2004.

2. Plaintiff served six years as a corrections officer in the Trumbull County Jail upon his full-time hiring.

3. On May 3, 2010, Plaintiff was reassigned to work security for the Trumbull County Sheriff's Office at the Department of Job and Family Services ("DJFS").

---

[1] *See* Proposed Joint Stipulations (ECF No. 32).

(4:16CV2213)

    4. Plaintiff was assigned to day shift security at the DJFS.

    5. Plaintiff's Facebook posting is marked as Joint Exhibit #1 (ECF No. 32-1). It reads as follows:



    6. Joint Exhibit #2 (ECF No. 32-2) is the Notice of Proposed Discipline served on Plaintiff and Plaintiff's appeal of the proposed discipline pursuant to the terms of the Collective Bargaining Agreement ("CBA).

    7. Joint Exhibit #3 (ECF No. 32-3) is the Step II Finding of Major Tom Stewart after conducting the Step II Hearing pursuant to the CBA.

    8. Joint Exhibit #4 (ECF No. 32-4) is the agreement reached between Plaintiff and Defendant concerning his discipline surrounding Plaintiff's Facebook post.

(4:16CV2213)

In April 2015 there was an incident between members of the Baltimore Police Department and Freddie Gray which, unfortunately, resulted in Mr. Gray's death. Deposition of Plaintiff (ECF No. 25) at PageID #: 158; Deposition of Defendant (ECF No. 26) at PageID #: 287-89; Deposition of Major Harold Firster (ECF No. 30) at PageID #: 528, Page 13. At the time Plaintiff posted on Facebook, the nation was embroiled in media attention surrounding Freddie Gray and race relations between African-American citizens and the police. *See Jones v. Chapman*, No. ELH-14-2627, 2017 WL 1546432, at *4 (D. Md. April 28, 2017) (finding the death of Freddie Gray has been the subject of intense media coverage, both in Maryland and nationally). Multiple cities, including Baltimore, erupted with protests and civil unrest with confrontations between the police and citizens.

Plaintiff posted the comment on Facebook (ECF No. 32-1) on May 2, 2015 while he was at home on his personal computer. His Facebook page clearly identified him as a Trumbull County Deputy Sheriff. ECF No. 25 at PageID #: 157; Plaintiff's Deposition Exhibits 2 (ECF No. 25 at PageID #: 223) and 3 (ECF No. 25 at PageID #: 224); ECF No. 26 at PageID #: 307. Plaintiff described his Facebook page as limited to friends and family. Plaintiff acknowledged, however, that anything he posts could be disseminated to others. ECF No. 25 at PageID #: 155. Plaintiff indicated that he took the post down after five or ten minutes. ECF No. 25 at PageID #: 167.

Helen Rucker, a Warren City Councilperson, and Frederick Harris, a former Safety Director for the City of Warren, contacted Defendant to complain and reported community disruption to the Sheriff. Ms. Rucker and Mr. Harris both knew Plaintiff as a Trumbull County

3

Deputy Sheriff. ECF No. 25 at PageID #: 157; ECF No. 25 at PageID #: 223. Karen Osborne, a supervisor and co-worker of Plaintiff at the DJFS, was also well aware of Plaintiff's status as a law enforcement officer. Ms. Rucker and Mr. Harris were personally upset with the racial overtones contained in the post made by a law enforcement officer working at the DJFS, and relayed that many others, particularly in the African-American community, were upset about Plaintiff's post. Both individuals were concerned about the spiraling effect these Facebook statements could have on the community. Affidavit of Helen Rucker (ECF No. 27-3); Affidavit of Frederick Harris (ECF No. 27-4); ECF No. 26 at PageID #: 287; ECF No. 30 at PageID #: 528, Page 14; PageID #: 529, Page 18, Defendant's Answers to Interrogatories (ECF No. 27-7). Mr. Harris articulated that a law enforcement officer making these statements was particularly upsetting to him. In addition, Defendant was informed about DJFS Supervisor Karen Osborne's complaint, as well as complaints from other employees in DJFS. He testified that Director John Gargano at DJFS expressed concern to him. Defendant's command staff had also received complaints from individuals at DJFS. ECF No. 26 at PageID #: 281-87.

Chief Deputy Ernie Cook was the first to relay complaints to Defendant about Plaintiff's Facebook post. ECF No. 26 at PageID #: 281-82. Plaintiff's post disrupted his workplace at the DJFS. ECF No. 27-3; ECF No. 27-4, Affidavit of Karen Osborne (ECF No. 27-5); ECF No. 26 at PageID #: 284-86; ECF No. 25 at PageID #: 199-200.

Approximately one week after the Facebook post, Plaintiff was called to the Sheriff's Department. ECF No. 25 at PageID #: 173. Maj. Firster waved him into his office; showed Plaintiff a photo of the Facebook post on his computer; asked if Plaintiff posted it and told him

(4:16CV2213)

the Sheriff wanted him fired. ECF No. 25 at PageID #: 173, 208-12. Defendant is the appointing authority with the sole authority to hire, fire and discipline. ECF No. 30 at PageID #: 532, Page 29. Maj. Firster took Plaintiff's weapon and badge. ECF No. 25 at PageID #: 210-11. Defendant made the decision to terminate Plaintiff without consulting anyone. ECF No. 26 at PageID #: 293-94, 305-306. The decision was based on Maj. Firster's determination of how seriously he viewed the post by a law enforcement officer in the midst of the Freddie Gray incident and the effects of the post on the community and workplace. ECF No. 26 at PageID #: 287, 293. Defendant would not have disciplined Plaintiff for the Facebook post if Plaintiff had not identified himself as a Sheriff's Deputy on his Facebook page. ECF No. 26 at PageID #: 303-304.

Plaintiff testified that he was told by Maj. Firster (when he formally served Plaintiff at his house with the proposed discipline) that it was all done for political gain, for votes. ECF No. 25 at PageID #: 185, 213-14. Maj. Firster disagreed with Defendant's decision to recommend termination and expressed his personal opinion to Plaintiff and "everybody." ECF No. 30 at PageID #: 532, Page 29.

Plaintiff was placed on administrative leave with pay while the proposed discipline proceeded through the CBA process and resulted in the June, 2015 Memorandum of Understanding that provides for a three-day suspension without pay. ECF No. 32-4.

This case was filed against Defendants Sheriff Altiere, Trumbull County and County Commissioners Frank S. Fuda, Mauro Catalamassa and Daniel E. Polivka on September 2, 2016. The Complaint (ECF No. 1) alleges that Defendants violated Plaintiff's First Amendment right to

(4:16CV2213)

freedom of speech in that he suffered an adverse employment action after allegedly engaging in constitutionally protected speech.[2]

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trustees., 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Ky. Dep't. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

---

[2] On June 27, 2017, the Court approved the parties' Stipulated Dismissal With Prejudice (ECF No. 21) of all claims against Trumbull County; County Commissioners Frank S. Fuda, Mauro Catalamassa and Daniel E. Polivka; and Sheriff Thomas Altiere, solely in his official capacity. *See* Marginal Order (ECF No. 22).

6

(4:16CV2213)

and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

(4:16CV2213)

## III. Analysis

**A. Plaintiff's Facebook post is not protected speech under the First Amendment.**

The Court of Appeals for the Sixth Circuit uses a burden-shifting framework to evaluate a § 1983 claim for unlawful retaliation in violation of the First Amendment. *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

> A plaintiff must first make a prima facie case of retaliation, which comprises the following elements: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant.

*Id.* (citation omitted); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016); *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001).

Defendant does not dispute that the suspension Plaintiff suffered constitutes adverse action. Nor does he dispute that his disciplinary actions were motivated by Plaintiff's Facebook post. ECF No. 27 at PageID #: 377-78. Accordingly, the Court focuses on whether Plaintiff's speech was protected, a question of law. *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017).

"When the plaintiff is a public employee, [ ]he must make additional showings to demonstrate that h[is] conduct was protected." *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). First, the employee must speak on a matter of public concern. *Mayhew*, 856 F.3d at 462

8

(4:16CV2213)

(citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)). Second, "the employee must speak as a private citizen and not as an employee pursuant to his official duties." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421, (2006)). Third, the employee must show that his interest in commenting on the matter of public concern outweighs "the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968)).

Plaintiff's Facebook post is a matter of public concern. The subject matter of the post was reaction to the death of Freddie Gray. The post did not address a matter of only personal interest---it was speech on a matter of a public concern. "Whether or not a plaintiff's speech touches on a matter of public concern is a question of law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012). It "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, ––– U.S. ––––, 134 S.Ct. 2369, 2380 (2014) (citation and internal quotation marks omitted). "In general, speech involves matters of public concern when it involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.' " *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (citation omitted); *see also Chappel v. Montgomery Cnty. Fire*

9

(4:16CV2213)

*Prot. Dist. No. 1*, 131 F.3d 564, 574 (6th Cir. 1997) ("[T]he First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information.").

The Court construes the evidence favorably to Plaintiff that he was speaking as a private citizen, although he identified himself as a Trumbull County Sheriff's Deputy and had pictures of Sheriff's cruisers on his Facebook page.

The third requirement – whether Plaintiff's interest in commenting on the matter of public concern outweighs the interest of Defendant, as an employer, in promoting the efficiency of the public services the Trumbull County Sheriff's Office performs through its employees – is dispositive here. The factors to be weighed in the balancing of interests include: (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the manner, time, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded plaintiff's ability to perform his duties. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

In considering a §1983 First Amendment retaliation claim brought by a police officer against his public employer, courts should consider the fact that members of a law enforcement agency are part of a quasi-military organization. When a police officer's speech is "reasonably calculated to create division, the speech may be unprotected because of its potential negative effect on the public." *Graham v. City of Mentor*, 118 Fed. Appx. 27, 30 (6th Cir. 2004) (citation

(4:16CV2213)

and internal quotation marks omitted). According to the Court of Appeals in *Gillis v. Miller*, 845 F.3d 677 (6th Cir. 2017):

> [The Sixth Circuit] ha[s] long recognized "the importance of deference" to law enforcement officials when speech threatens to undermine the functions of organizations charged with maintaining public safety. *See, e.g.*, *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989); *Cherry v. Pickell*, 188 Fed.Appx. 465, 469-70 (6th Cir. 2006) ("[I]n the context of police departments, we have emphasized that the court should show 'deference to the city's judgment on the matter of discouraging public dissension within its safety forces.' " (citation omitted)); *cf. Kelley v. Johnson*, 425 U.S. 238, 247-48, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) . . . .

*Id.* at 684.

Plaintiff's Facebook post contained racial overtones and assaulted members of the community as well as others in his workplace. As Plaintiff himself described, his Facebook post "caused a huge riff with all the workers." ECF No. 25 at PageID #: 200. It was disruptive to the community and his workplace at the DJFS. ECF No. 27-3; ECF No. 27-4; ECF No. 27-5; ECF No. 25 at PageID #: 165-68, 199-201, 216; ECF No. 26 at PageID #: 284-86.

Plaintiff cannot demonstrate his three-day suspension violated the First Amendment because of the disharmony, disruption and concern Defendant had for the Trumbull County community after the multiple reports of disruption in the community and at the DJFS, his workplace. Defendant had good reason to fear for his community and address the disharmony in the workplace given the content and timing of the inflammatory post made by a law enforcement officer and the complaints and reactions he received from Ms. Rucker, Mr. Harris, Chief Deputy Cook, Director Gargano, and Karen Osborne, which were acknowledged by Plaintiff. Furthermore, Defendant, for good reason, did not want any perception that law enforcement

11

(4:16CV2213)

officers would treat anyone differently because of his race. Defendant also wanted to avoid protests that could erupt in the community and cause public safety issues like had occurred in other cities at the time of the Freddie Gray incident. ECF No. 27-7 at Answers to Interrogatories 6, 9 11, 12, 13, 17; ECF No. 26 at PageID #: 287, 305. *Gillis*, 845 F.3d at 687 ("We therefore join those courts and the *Waters* plurality and hold that a public employer need not show actual disruption of the public agency in all cases in order to prevail under the *Pickering* balancing test.").

### B. Qualified Immunity

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S 731, 741 (2011). If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the official is immune. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494 (6th Cir. 2012). "Clearly established law" should not be defined "at a high level of generality" and the clearly established law must be "particularized" to these facts of the case. *Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. 533 U.S. 194, 201 (2001). The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Id.* In

12

(4:16CV2213)

*Pearson v. Callahan*, the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. 555 U.S. 223, 236 (2009). The Court does not address Defendant's qualified immunity argument because it concludes for the reasons set forth above that Plaintiff has not sustained his burden to demonstrate a violation of the First Amendment.

### IV. Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and Defendant Trumbull County Sheriff Thomas Altiere, in his individual capacity, is entitled to a judgment as a matter of law. For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 27) is granted. Final judgment will be entered in favor of Sheriff Altiere and against Plaintiff on the Complaint (ECF No. 1).

IT IS SO ORDERED.

 March 29, 2018  /s/ Benita Y. Pearson
Date  Benita Y. Pearson
 United States District Judge